UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
WAYNE L. SHARRER,

                               Plaintiff,

    -v-                                          7:10-CV-428

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                               OF COUNSEL:

CONBOY, MCKAY, BACHMAN & KENDALL, LLP   LAWRENCE D. HASSELER, ESQ.
Attorneys for Plaintiff
407 Sherman Street
Watertown, NY 13601

OFFICE OF REGIONAL GENERAL COUNSEL     DAVID L. BROWN, ESQ.
SOCIAL SECURITY ADMINISTRATION          KAREN G. FISZER, ESQ.
   REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

       This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits.  The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

Plaintiff Wayne L. Sharrer ("Sharrer" or "plaintiff") filed applications for SSD and SSI benefits on March 16, 2007, and September 5, 2007, respectively, claiming a period of disability beginning on March 2, 2007. His claims were denied on May 18, 2007, and April 5, 2007,[1] respectively. He filed a request for a hearing on June 29, 2007, and a video hearing was held before an Administrative Law Judge ("ALJ") on May 27, 2009. The ALJ rendered a decision on August 27, 2009, denying plaintiff's claims. Sharrer filed a timely request for review on October 30, 2009. On March 5, 2010, the Appeals Council denied the request for review of the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner. On April 13, 2010, plaintiff filed the complaint in this matter.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217

---

[1] Sharrer's claim for SSI benefits was initially denied because he had resources exceeding the allowed limit. He subsequently filed an additional application, on September 5, 2007, reflecting resources below the limit.

(1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)).  If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148.  "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available.  42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing.  Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)).  Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing."  Id. at 644.  However, where the underlying

administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings. Id. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); Parker, 626 F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

### B.  Disability Determination—The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Administrative Law Judge ("ALJ") must follow a five step evaluative process in determining whether an individual is disabled.  See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful activity.  If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits.  Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged is substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the opinion of a treating physician is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record'" it is given significant weight. Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)). However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight. Id.

The burden of proof with regard to the first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and  final step. Perez, 77 F.3d at 46. This step requires the agency to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that "factors such as a claimant's age, education, and

previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary." Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

## IV. ANALYSIS

In the first step of her analysis the ALJ found that plaintiff was not engaged in substantial gainful activity. At step two the ALJ determined that Sharrer's diabetes mellitus and resulting peripheral neuropathy of the lower extremities were severe impairments, although he did not have a severe mental impairment. Third, the ALJ found that plaintiff's severe impairment did not meet or medically equal one of the listed impairments of Appendix 1. Next, the ALJ found Sharrer could perform the full range of sedentary work. In the fourth step, the ALJ determined that plaintiff could not perform his past relevant work of machinist. Finally, in taking into consideration plaintiff's RFC, age, education, and work experience, the ALJ found Sharrer could perform work existing in significant numbers in the national economy.

Plaintiff raises four points of alleged error. First, he contends that the ALJ failed to properly review and weigh the medical evidence of record. Next, Sharrer argues that the ALJ

did not properly determine his RFC. Third, he argues that the ALJ did not properly evaluate his subjective allegations of pain and disabling symptoms. Finally, according to Sharrer the ALJ erred in failing to obtain testimony of a vocational expert and otherwise did not meet the burden of establishing that significant work in the national economy that plaintiff can perform exists. Sharrer's first two arguments, along with whether substantial evidence supports the ALJ's determinations, are intertwined and will be analyzed together, followed by analysis of his arguments about plaintiff's credibility and failure to obtain a vocational expert.

### A.  Review and Weight of Medical Evidence; RFC

Plaintiff argues that the ALJ failed to give controlling weight to treating physician Dr. Seidman's opinion, while giving substantial weight to non-treating physician Dr. Ryczak. According to Sharrer, Dr. Seidman's assessment that significant pain resulted from his peripheral neuropathy negatively affecting his fine motor function, ambulation, and endurance and preventing him from walking for even two hours in a work day should have precluded the ALJ's finding that he could perform a full range of sedentary work.

Initially it is noted that Dr. Seidman did not begin treating Sharrer until January 17, 2008, while plaintiff claims onset of disability as of March 2007. Dr. Barilla, plaintiff's prior treating physician, in response to an inquiry from the Pennsylvania Office of Vocational Rehabilitation, opined that Sharrer could work or attend a training program full time, despite his inability to stand for extended periods of time. R. at 263. On February 19, 2008, Dr. Seidman noted that plaintiff's pain from neuropathy was controlled with medication. Id. at 307.

On July 8, 2008, Dr. Seidman opined that Sharrer's painful peripheral neuropathy significantly affected his fine motor function, ambulation, and endurance, preventing

continuing his prior work as a machinist. Id. at 313. Dr. Seidman noted in August 2008 that plaintiff's neuropathic symptoms were relieved, but not resolved, with medication. Id. at 314. Dr. Seidman completed a Medical Source Statement on October 15, 2008, stating that plaintiff's pain did not prevent him from functioning in every day activities or work. Id. at 319. Additionally, according to Dr. Seidman's statement, physical activity would increase plaintiff's pain and cause distraction, but would not prevent functioning in work tasks. Id. Dr. Seidman opined that plaintiff could frequently lift and/or carry less than ten pounds, and had no limitation in sitting. Id. at 315–16. However, Dr. Seidman opined that plaintiff could stand and/or walk less than two hours in a work day and was limited in upper and lower extremities as to pushing and/or pulling as well as other manipulative functions. Id. at 317–19. Dr. Seidman also noted that medication would severely limit Sharrer's effectiveness at work due to distraction, inattention, and drowsiness. Id. at 319.

In January 2009, Dr. Seidman noted that plaintiff maintained good control of his neuropathic pain. On April 24, 2009, Dr. Seidman's progress note again indicated that Sharrer was taking pain medication with good control of his symptoms.

On May 14, 2009, Dr. Seidman completed another Medical Source Statement with the same limitations as he previously noted with the following exceptions. Id. at 323–27. In 2009, Dr. Seidman opined that Sharrer could frequently lift and/or carry ten pounds, rather than less than ten pounds. Id. at 323. Further, he opined that plaintiff's pain would be distracting to adequate performance of daily activities or work, but that physical activity does not increase pain. Id. at 327. Importantly, at this time Dr. Seidman opined that medication somewhat limited plaintiff's work ability, but that it would not create serious work problems. Id.

The ALJ stated that she "accorded substantial weight to" Dr. Seidman's opinion. Id. at 16. Dr. Seidman's opinions as to plaintiff's limitations in standing and walking are supported by the diagnosis of painful peripheral neuropathy of his lower extremities. See, e.g., id. at 194, 204 (Dr. Dubov EMG results 8-28-07), 234 (neurologist Dr. Majeed 5-10-07), 349 (Dr. Wasserman 9-27-07). Moreover, these opinions of Dr. Seidman were not inconsistent with other evidence in the record. Therefore, the ALJ properly accorded substantial weight to the opinions of Dr. Seidman regarding the effects on plaintiff of painful lower extremity peripheral neuropathy.

The ALJ declined to accept Dr. Seidman's conclusion that Sharrer had significant manipulative limitation and could never climb, balance, kneel, crouch, crawl, or stoop. Plaintiff himself testified at his hearing that although he sometimes had trouble gripping things, he had a brace to wear when doing things with his hands. Id. at 28. He testified that he had the strength to lift twenty pounds—the issue was not his strength, but the pressure on his feet if required to walk with that much weight. Id. at 33. Sharrer testified that he sometimes vacuumed and did dishes, cooked for himself occasionally, tried to ride a bike, and helped with gardening such as pulling weeds (sitting down). Id. at 34. He further testified that he was looking for work as an assembly worker and his ultimate goal was to become an accountant or bookkeeper, although the numbness in his hands made computer work difficult. Id. at 36–37. This testimony by plaintiff is inconsistent with Dr. Seidman's opinion that plaintiff has severe manipulation limitations. Further, plaintiff points to no diagnostic tests that were done establishing a condition that would result in limitations in his ability for manipulative function. Thus, it cannot be said that Dr. Seidman's opinion regarding limitations in Sharrer's ability to perform fine manipulation is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." See Poupore, 56 F.3d at 307 (internal quotation omitted). Additionally, although Dr. Seidman opined that plaintiff could not climb, balance, reach, and so forth, these functions were not necessary for performance of sedentary work.

Sharrer also takes issue with the ALJ "accord[ing] substantial weight to the opinion of the state agency reviewing physician, Mary Ryczak, M.D." R. at 16. The ALJ credited Dr. Ryczak's opinion that Sharrer could occasionally lift and carry ten pounds and frequently lift and carry up to twenty pounds, could stand and walk for two hours in an eight hour workday, could sit for six hours in an eight hour workday, and had no postural, environmental, manipulative or other limitations. According to plaintiff, this opinion by Dr. Ryczak that plaintiff could do a full range of light work is the only conclusion contrary to that of Dr. Seidman.

Although the ALJ stated that she was giving substantial weight to Dr. Ryczak's opinion, she found, not that plaintiff could do a full range of light work, but, rather, plaintiff could do a full range of sedentary work. Id. at 17. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files . . . ." 20 C.F.R. § 404.1567(a). Sedentary jobs generally involve sitting, although they may require "a certain amount of walking and standing." Id. A finding that Sharrer could do a full range of sedentary work was supported by substantial evidence and the ALJ followed correct legal standards.

### B. Plaintiff's Credibility

A plaintiff's subjective complaint "of pain is an important factor to be considered in determining disability. Mimms v. Heckler, 750 F.2d 180, 185 (2d Cir. 1984). An ALJ,

- 10 -

although permitted to independently judge subjective complaints of pain, must "'evaluate the credibility of a claimant . . . in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" Id. at 186 (quoting McLaughlin v. Sec'y of Health, Educ. & Welfare, 612 F.2d 701, 705 (2d Cir. 1980) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). The credibility evaluation must also include consideration of plaintiff's "demeanor, testimony regarding his symptoms and daily activities and other evidence." Diaz v. Bowen, 664 F. Supp. 725, 730 (S.D.N.Y. 1987) (citing Marcus, 615 F.2d at 27).

The ALJ stated that Sharrer's "testimony was partially credible but was not credible regarding his allegations of total disability." R. at 16. Sharrer completed a function report on April 23, 2007. In this report plaintiff stated that he made meals such as frozen dinners and cereal or eggs and toast. Id. at 132. He does a little household cleaning and laundry at the laundromat every two weeks. Id. He shovels only his doorway when it snows, and shops for food or household items twice a week. Id. at 133. Sharrer stated that he could walk 100 to 300 feet before he had to rest because of pain, and that walking became difficult after one to two hours. Id. at 135. He could lift fifty pounds but that caused foot pain. Id. Pain in his feet also resulted from squatting, standing and kneeling. Id. Plaintiff remarked that his pain was becoming worse, and that he was following his doctors' instructions.

Sharrer also testified at the hearing before the ALJ on May 27, 2009. He testified that he had numbness in his hands causing trouble gripping things, but he had a brace to wear when sleeping and doing things with his hands. Id. at 28. He stated that he had the strength to lift twenty pounds, but walking with such weight would be very difficult. Id. at 33. In terms of activities of daily life, he does laundry, handles his own personal hygiene, sometimes vacuums and does dishes, cooks for himself on occasion when his parents are

away, helps with gardening (usually while sitting down), and tries to ride a bicycle for exercise. Id. at 33–34. Plaintiff testified that he was looking for work, such as assembly work, and has applied for other jobs. Id. at 34–36. He was taking computer classes, but the numbness in his hands made computer work difficult. Id. at 34–35, 37. According to Sharrer, his goal was to become an accountant or bookkeeper. Id. at 37.

None of plaintiff's descriptions of his daily activities or his subjective limitations caused by pain as set forth above are inconsistent with the ALJ's finding that he can perform sedentary work. In fact, the ALJ stated that she found Sharrer credible except to the extent that he concluded that he was totally disabled (which is a legal conclusion rather than a subjective allegation of the extent that pain affects specific functionality and activities). The ALJ did not find that plaintiff's pain was less severe than plaintiff himself described.

Further, as defendant points out, the fact that plaintiff collected Pennsylvania unemployment compensation indicated he was ready, willing, and able to work. Sharrer's attending computer classes, searching for work, applying for jobs, and having a goal of obtaining a position such as in assembly or bookkeeping indicates that he believes he is capable of working. Moreover, as set forth in detail above, the medical evidence in the record supports the ALJ's finding as to plaintiff's RFC, taking into full consideration his subjective complaints of pain. See, e.g., R. at 263 (Dr. Barilla opining that plaintiff can work full time), 313 (Dr. Seidman opining that Sharrer can do sedentary clerical work not involving fine motor manipulation or prolonged standing).

The ALJ assessed plaintiff's credibility following the proper legal standards, and her credibility assessment of plaintiff's subjective complaints was consistent with the objective evidence in the record.

C. **Need for Vocational Expert**

As determined above, the ALJ properly determined that plaintiff could perform a full range of sedentary work. The ALJ then applied her finding that Sharrer could perform sedentary work, along with his age, education, and work experience to determine that Medical-Vocational Rule 201.28 ("grid Rule") directed a finding of "not disabled." Plaintiff contends that this use of the so-called grids to determine that he was not disabled was improper because he had significant non-exertional limitations.

Where a claimant suffers only exertional limitations, and "whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether" the claimant is disabled. Pratts v. Chater, 94 F.3d 34, 38–39 (2d Cir. 1996). However, the grid rules cannot be used to direct a conclusion as to disability where the claimant has "'additional "nonexertional" impairments.'" Id. at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 604–05 (2d Cir. 1986)).

Sharrer was under 44 years of age, completed high school and some college, and performed skilled or semi-skilled jobs as a machinist. These characteristics match those listed in grid Rule 201.28. Therefore, it was proper for the ALJ to accept the conclusion of not disabled directed by the grid Rule. It is also noted that even if machinist work was unskilled, the grid Rule would direct a finding of not disabled. Moreover, a disability examiner identified picker, packer, and sorter as jobs that exist in significant numbers in the national economy that correspond to Sharrer's abilities to perform work. R. at 39.

According to plaintiff, he suffers from "significant non-exertional limitation." He lists a sleep deficit from pain, adjustment disorder, and the side effects of pain medication, which lead to fatigue and difficulty concentrating. Pl.'s Br. at 20. The non-exertional limitations

listed by plaintiff, for example, difficulty grasping and inability to climb, are exertional limitations already taken into consideration in the RFC analysis. Therefore, only the true non-exertional limitations will be discussed.

Sharrer completed a Function Report on April 23, 2007. He stated that he had no problem paying attention. R. at 135. He said he could follow written and spoken instructions very well. Id. He further characterized his ability to get along with authority figures as "excellent." Id. at 136.

Notes from Dr. Trawin, a psychologist, on April 26, 2007, opined that plaintiff did not suffer from any mental impairment. Id. at 234. She noted that he was depressed because he is in pain, cannot stand for long periods of time, and cannot work at a job he liked. Id. She stated that his disability is physical, not psychological. Id. at 235.

Psychologist Dr. Perch completed a Psychiatric Review Form on May 8, 2007. He categorized Sharrer as suffering from an affective (adjustment) disorder. Id. at 242, 245. This was based upon review of Dr. Trawin's records. See id. at 254. According to Dr. Perch, plaintiff had mild limitation of activities of daily living; moderate limitation in maintaining social functioning; and moderate limitation in maintaining concentration, persistence, or pace. Id. at 252. Consistent with those categorizations, Dr. Perch's Mental RFC Assessment found marked limitations in ability to understand, remember, and carry out detailed instructions. Id. at 291. He found moderate limitation in ability to accept instructions and respond appropriately to criticism and respond appropriately to changes in the work setting. Id. at 292. However, he found no significant limitation in sixteen other categories, such as ability to understand and remember simple instructions, ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without

- 14 -

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Id. at 291–92. Dr. Perch concluded that Sharrer "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." Id. at 293.

Dr. Seidman, plaintiff's treating physician, completed a Medical Source Statement on October 15, 2008. He opined that Sharrer had pain, but it would not prevent him from functioning in daily activities or work. Id. at 319. He found that physical activity would increase plaintiff's pain and cause distraction, but would not prevent functioning in work tasks. Id. Finally, Dr. Seidman stated that Sharrer's pain medication would severely limit his effectiveness in the work place because of distraction, inattention, and drowsiness. Id. However, a similar Source Statement completed by Dr. Seidman on May 14, 2009, reflects different conclusions. Id. at 327. Dr. Seidman stated that Sharrer has pain that would be distracting to adequate performance of daily activities or work and that physical activity would not increase pain (although it was limited due to balance and weakness). Id. Importantly, Dr. Seidman opined that plaintiff's medication would somewhat limit his ability to work but would not create serious work problems. Id.

Sharrer testified at the hearing on May 27, 2009, that his pain medication made him "a bit drowsy." R. at 31. He also testified that he is sometimes tired in the daytime because he wakes up frequently at night due to pain. Id. at 32. However, he also testified that he wants to find some kind of work, has applied for jobs, and intends to take further classes to increase his skills so that he can get a job. Id. at 35–37.

None of the medical evidence (including that from psychologists) indicates significant or severe non-exertional limitations. Plaintiff's own testimony and Function Report

also do not indicate that he suffers from significant non-exertional limitations. Therefore, it was proper for the ALJ to follow the grid Rule to conclude that Sharrer was not disabled, without calling a vocational expert to testify.

## V. **CONCLUSION**

The ALJ gave substantial weight to plaintiff's treating physician, Dr. Seidman, while also considering the other medical evidence. Substantial evidence in the record supports the ALJ's conclusion that Sharrer can perform a full range of sedentary work. The ALJ followed the proper legal standards in assessing plaintiff's credibility, reaching a conclusion that was consistent with the other record evidence. The ALJ did not err in relying on the grid rules without obtaining testimony from a vocational expert.

Accordingly, it is

ORDERED that

1. The Commissioner's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

3. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: December 20 , 2012
      Utica, New York.